172 So.2d 285

**Successions of Louis Robert WEBRE and Ulyssia Landry, wife of Louis Robert Webre.**

**No. 47373.**

Feb. 23, 1965.

Judgment of Court of Appeal reversed, and matter remanded.

Guzzetta & LeBlanc, Thibodaux, for applicant.

Martin, Himel & Peytavin, New Orleans, for defendants-respondents.

SANDERS, Justice.

This is a succession proceeding. Certain children and grandchildren of Louis Robert Webre and Mrs. Ulyssia Landry Webre, the decedents, seek an inventory and administration of the estates. They also seek to annul as simulations separate conveyances of land by the decedents to two other children, Septime Raymond Webre and Ada Webre Boudreaux. Alternatively, the petitioners pray for collation of the property.

The assailed conveyances were executed on February 15, 1938. Louis Robert Webre died on September 25, 1940; his wife, Ulyssia Landry Webre, died on November 10, 1947. The petitioners brought this proceeding on November 6, 1950, more than ten years after the death of Louis Robert Webre.

In the answer filed, the defendants asserted the validity of the conveyances and resisted collation. They also pleaded the prescription of five years under LSA–C.C. Article 3542 and of ten years under LSA–C.C. Article 3544 as to the conveyance made by Louis Robert Webre.

On September 26, 1962, the petitioners sought to file a supplemental and amended petition alleging alternatively that if it should be found that the defendants had paid any consideration for the land, then the price was very low, being an advantage to be collated by the defendants under LSA–C.C. Article 1248. The defendants objected to the supplemental petition, and the Court maintained the objection.

The district court sustained the plea of prescription of five years for the reduction of excessive donations under LSA–C.C. Article 3542 as to the conveyance made by Louis Robert Webre. The plaintiffs appealed. The defendants answered the appeal, praying that the judgment of the district court sustaining the prescription of five years be affirmed and, alternatively, that the prescription of ten years under LSA–C.C. Article 3544 be maintained.

The Court of Appeal sustained the prescription of ten years under LSA–C.C. Article 3544 and affirmed the judgment of the district court, as thus amended. La. App., 164 So.2d 49. Upon application of the plaintiffs, we granted a writ of certiorari to review the judgment of the Court of Appeal. 246 La. 728, 167 So.2d 304.

In this Court, the defendants have filed a plea of prescription of ten years under LSA–C.C. Article 2221.

We have before us, therefore, three pleas of prescription directed at the attack upon the conveyance of Louis Robert Webre: five years under LSA–C.C. Article 3542, relating to reduction of excessive donations and nullity or rescission of contracts; ten years under LSA–C.C. Article 2221, relating

to actions of nullity or rescission of agreements; and ten years under LSA–C.C. Article 3544, relating to personal actions. These pleas of prescription must be considered in the light of the allegations of the petition.

The petition and attached documents disclose the following facts: Louis Robert Webre and Ulyssia Landry were married on July 3, 1886. Seven children were born of the marriage.

On February 15, 1938, Louis Robert Webre executed in authentic form an act of sale of a tract of land in St. John the Baptist Parish to two of his children, Septime Raymond Webre and Ada Webre Boudreaux, who executed the act with him. The act of sale recited a price of $1200.00, of which $600 was payable in cash and the balance of $600 was represented by a promissory note due in one year, and secured by a mortgage and vendor's lien. The act recited that Louis Robert Webre had acquired the property by purchase on December 31, 1896.

Likewise, on February 15, 1938, Mrs. Ulyssia Landry Webre executed an act of sale of another tract of land to the same children. Although this conveyance has been attacked in this proceeding, no issue concerning it is now before this Court.

Louis Robert Webre died intestate on September 25, 1940, and his wife died intestate on November 10, 1947.

The petition further alleged that the land was worth more than $20,000.00 on the date of the act of sale from Louis Robert Webre. The named transferees gave "no sale was a "pure simulation and in fraud of consideration whatsoever" for it, and the the rights of your petitioners."

In Article 11, the petition further alleged:

"That subsequent to the aforesaid purported acts of sale, and particularly during the month of August, 1941, it was freely admitted by the defendants and the decedent, Mrs. Ulyssia Landry, widow of Louis Robert Webre, that the said sales were 'fake' sales and that they were made purely for the purposes of convenience and were not bona fide sales."

Plaintiffs prayed that the acts of sale be declared null, void, and of no effect. In the alternative only, they prayed that the defendants be ordered to collate the property to the successions of the decedents.

After an analysis of the pleadings, the Court of Appeal concluded that the plaintiffs had alleged no ground for the primary demand of nullity but only a basis for collation. The Court held that the demand for collation had prescribed under the ten year prescription of Article 3544, LSA–C.C. since the suit had been filed more than ten years after the death of Louis Robert Webre.

We do not agree with this construction of the petition. Although the petition is inartistically drawn, the allegations are sufficient to admit proof that the act of sale was a sham or that the sale was at a very low price or that it was a donation in disguise.

■ The plaintiffs attack the ruling of the district court rejecting the supplemental petition seeking collation under LSA–C.C. Article 1248. Filed after the answer had been served, the supplemental petition added nothing substantial to the factual allegations already made. Rather, it advanced the theory that if the Court found that the sale was at a very low price, the advantage should be collated as provided by the codal article. Since the original petition alleged the material facts and prayed for collation, the amendment was unnecessary under our system of fact pleading to enforce collation under any appropriate provision of the law. The supplemental petition advanced only legal argument. For this reason, if for no other, the district court did not abuse its discretion under LSA–C.C.P. Article 1151 in disallowing the supplemental petition.

The following articles of the Louisiana Civil Code control the relief sought in this proceeding:

Article 2239. "Counter letters can have no effect against creditors or bona fide purchasers; they are valid as to all others; but forced heirs shall have the same right to annul absolutely and by parol evidence the simulated contracts of those from whom they inherit, and shall not be restricted to the legitimate [legitime]."

Article 1248. "The advantage which a father bestows upon his son, though in any other manner than by donation or legacy, is likewise subject to collation. Thus, when a father has sold a thing to his son at a very low price, or has paid for him the price of some purchase, for [or] has spent money to improve his son's estate, all that is subject to collation."

Article 2444. "The sales of immovable property made by parents to their children, may be attacked by the forced heirs, as containing a donation in disguise, if the latter can prove that no price has been paid, or that the price was below one-fourth of the real value of the immovable sold, at the time of the sale."

Article 2239 contemplates a feigned, or pretended, contract. Such a contract may be declared a simulation, that is, declared to have no legal effect. The demand is commonly referred to as one in declaration of a simulation.[1]

1. Ideal Savings & Homestead Ass'n v. Gould, 163 La. 442, 112 So. 40; 17 Tulane Law Review 457.

■ Article 1248 contemplates an actual sale of property at a very low price by a parent to a child. Article 2444 contemplates a donation in disguise by a parent to a child, that is, a sale in which no price has been paid or one in which the price paid is less than one-fourth of the value of the property. Article 1248 expressly provides for relief by collation.[2] No independent ground for nullity of a donation having been alleged, the appropriate relief under Article 2444 is likewise collation.[3]

The petition therefore presents two demands: a demand in declaration of a simulation and a demand for collation. To the demands, as previously noted, the defendants have pleaded the prescriptions of five and ten years.

To dispose of the pleas of prescription, we must consider the two demands separately.

The demand in simulation is directed to a feigned, or pretended, sale. Such a sale has no real existence. The true intention of the parties is that no transfer take place, the property remaining that of the supposed seller and no price being actually paid. The sale is a sham. Since the property has never left the patrimony of the ostensible seller, a simulated sale is an absolute nullity.

We said in Spiers v. Davidson, 233 La. 239, 96 So.2d 502:

" * * * [A] simulated contract is one which has no substance at all, or is purely fictitious and a sham, an act of mere pretense without reality. Such a contract, although clothed in concrete form, is entirely without effect and may be declared a sham at any time at the demand of any person in interest." [4]

■ An action to annul a simulated contract under Article 2239, LSA–C.C. is imprescriptible.[5]

Hence, the pleas of prescription must be overruled as to the demand in declaration of simulation.

More difficult are the pleas of prescription to the demand for collation.

2. See, Gilmore v. Gilmore, 137 La. 162, 68 So. 395 and Gonsoulin v. Gonsoulin, 132 La. 737, 61 So. 774.
3. Clark v. Hedden, 109 La. 147, 33 So. 116; Montgomery v. Chaney, 13 La.Ann. 207; Heirs of Dupuy v. Dupont, 11 La. Ann. 226; Burk, Collation in Louisiana, 26 Tulane Law Review 203, 215–217; Lemann, Some Aspects of Simulation in France and Louisiana, 29 Tulane Law Review 22, 51–52.
4. See also Maddox v. Butchee, 203 La. 299, 14 So.2d 4; Houghton v. Houghton, 165 La. 1019, 116 So. 493; Ideal Savings & Homestead Ass'n. v. Gould, 163 La. 442, 112 So. 40; Hibernia Bank & Trust Co. v. Louisiana Ave. Realty Co., 143 La. 962, 79 So. 554; Lemann, Some Aspects of Simulation in France and Louisiana, 29 Tulane Law Review 22; and 17 Tulane Law Review 457, 458.
5. Schlalaida v. Gonzales, 174 La. 907, 142 So. 123; Smelley v. Ricks, 174 La. 734, 141 So. 445; Houghton v. Houghton, 165 La. 1019, 116 So. 493; Guilbeau v. Thibodeau, 30 La.Ann. 1099; Kinney v. Kinney, La.App., 150 So.2d 671.

■ It is now well settled that the five year prescription of LSA–C.C. Article 3542 does not apply to collation.[6] This Court, however, has not as yet determined which, if any, of the several prescriptions does apply to collation. The identification of the prescription was reserved in Himel v. Connely, 195 La. 769, 197 So. 424, holding the five year prescription inapplicable. The prescriptive period has been ably treated in the law journals. See 3 Louisiana Law Review 284, 460; 27 Tulane Law Review 241; and 9 Loyola Law Review 912.

■ After a thorough analysis, the Court of Appeal applied the prescription of ten years under LSA–C.C. Article 3544. We agree that this prescription applies to collation.

Article 3544 provides:

"In general, all personal actions, except those before enumerated, are prescribed by ten years."

■ Collation, or the return of property to a succession, is the means by which the law seeks to assure the equal distribution of the ancestor's property among the direct descendants.[7] It arises from an obligation, or duty, imposed upon the heir by law.[8]

The heir may release himself from this duty by renouncing the succession.[9] Despite a renunciation, however, the law protects the legitime of the heirs.[10]

Collation can be demanded only by the heirs designated by law.[11] It is accomplished in two ways: in kind or by taking less. Collation is made in kind when the property is returned to the succession; it is made by taking less when the heir reduces his inheritance in proportion to the value of the property he has received. Generally, the collation of immovables may be made either in kind or by taking less. The collation of movables must be made by taking less.[12]

■ Basic to collation, as we view it, is the duty of the heir. The right to enforce the duty is restricted to the designated co-heirs. Although the demand has unique features, we think that it must be classified as a personal action under LSA–C.C. Article 3544 for purposes of prescription. We hold that the ten year prescription of that article applies to a demand for collation.

To avoid the prescription, the plaintiffs rely mainly upon LaBarre v. Rateau, 210

6. In Re Andrus, 221 La. 996, 60 So.2d 899; Himel v. Connely, 195 La. 769, 197 So. 424.
7. LSA–C.C. Arts. 1251–1253; Oppenheim, Louisiana Law of Successions, 4 LSA–C.C. pp. 1, 70.
8. 3 Planiol, Civil Law Treatise (An English Translation by the Louisiana State Law Institute) Nos. 2211 and 2214 (1959).
9. LSA–C.C. Art. 1237.
10. LSA–C.C. Arts. 1234, 1237, 1505.
11. LSA–C.C. Arts. 1235, 1991.
12. LSA–C.C. Arts. 1251, 1252, 1253, 1255, 1283.

La. 34, 26 So.2d 279 and Pearlstine v. Mattes, 223 La. 1032, 67 So.2d 582. These cases held that the ten year prescription of Article 3544 could not be invoked in the actions there considered. But the cases are inapposite. Unlike the present case, both involved real actions.

Having concluded that the ten year prescription applies, we reach the question of when the prescription begins to run. The plaintiffs assert that it runs only from the date they acquired knowledge of the conveyance. Alternatively, they assert that it runs only from the filing of the formal succession proceedings. We find no merit in either contention.

A succession is opened upon the death, and all rights vest as of that time.[13] From that moment, an heir may file formal succession proceedings and demand collation.

■ Activating the prescription only from the filing of formal succession proceedings would severely limit its effect. Collation is barred in any event after the heirs unconditionally accept a succession and obtain judgment putting them in possession of the property.[14]

■ We conclude that prescription runs from the death of the person to whose succession collation is to be made.[15]

■ The petition discloses that the property conveyed by Louis Robert Webre was acquired by purchase during his marriage. We cannot determine, however, whether the property was community since the deed of acquisition is not a part of the pleadings. The evidence may establish that it was community property and that the widow accepted the community. If such be the case, the property is collated by halves: one half to the succession of Robert Louis Webre and one half to that of his wife, Ulyssia Landry Webre.[16] For this collation, the ten year prescription as to one half runs from death of Louis Robert Webre and as to the other half, from the death of his wife.

If the evidence establishes that the widow renounced the community or that the property was separate property of Louis Robert Webre, the prescription as to collation of the whole runs from his death.

We conclude, therefore, that we cannot now decide the plea of prescription as to collation. Whether the property was in

13. LSA–C.C. Arts. 934, 940.
14. LSA–C.C. Art. 1290; Succession of McGeary, 220 La. 391, 56 So.2d 727; Doll v. Doll, 206 La. 550, 19 So.2d 249.
15. See LSA–C.C. Arts. 1228, 1242; Baillio v. Baillio, 5 Mart. (N.S.) 228; 26 Tulane Law Review 203, 204; 27 Tulane Law Review 232, 243.
16. LSA–C.C. Art. 1242; Succession of Schneidau, 182 La. 613, 162 So. 196; Dickson v. Dickson, 33 La.Ann. 1370; Succession of Montegut, 2 La.Ann. 630; Baillio v. Baillio, 5 Mart. (N.S.) 228; 26 Tulane Law Review 203, 214.

fact community and whether the widow accepted the community are evidentiary matters. A remand of the case is required to permit the district court to make its findings from evidence to be presented and to pass upon the plea of prescription in conformity to the views herein expressed.

For the reasons assigned, the judgment of the Court of Appeal is reversed; all pleas of prescription are overruled as to the demand in declaration of a simulation; the pleas of prescription are overruled as to the demand for collation except the plea of ten years under Article 3544 of the Louisiana Civil Code; and the case is remanded to the Twenty-Ninth Judicial District Court for the Parish of St. John the Baptist for further proceedings according to law and consistent with the views herein expressed. All costs in this Court are to be paid by the defendants, but the assessment of other costs is to await the final disposition of the case.

McCALEB, Justice (concurring in part and dissenting in part).

I am in full agreement with that part of the judgment overruling all pleas of prescription as to the principal demand on declaration de simulation.

On the other hand, I cannot subscribe to the ruling on the plea of the ten-year prescription as to the alternative demand for collation.[1] It appears to me that the plea of prescription to the demand for collation is premature as is, perhaps, the demand for collation itself. Thus, the ruling on this plea is not in essence a judgment but purely an advisory opinion as collation may never become an issue in the case and, if it does, it can only arise if and when there is a partition of the succession property. See Articles 1331, 1332 and 1333 of the Civil Code.

Collation cannot be exacted in partitions among co-owners. Successions of Scardino, 215 La. 472, 47 So.2d 923 and cases there cited. It is an incident to the action of partition of succession property among the heirs. Lamotte v. Martin, 52 La.Ann. 864, 27 So. 291. So, unless and until there is a partition of succession property, there is no basis whatever for a demand by a co-heir for collation.

In fine, since the demand for collation is premature, the plea of prescription is likewise premature, and the opinion herein relative to the prescription applicable to a demand for collation is also premature, purely advisory and probably incorrect inasmuch as the action for a partition is barred (even if the co-heir has been in exclusive possession) only by the prescription of thirty

---

1. Article 1227 of the Civil Code defines collation to be " * * * the *supposed* or *real* return to the *mass of the succession* which an heir *makes* of property which he received in advance of his share or *otherwise*, in order that *such property* may be *divided together with the effects of the succession*." (Emphasis mine).

years. See Articles 1304 and 1305 of the Civil Code.

FOURNET, Chief Justice (concurring in part and dissenting in part).

I am in full accord with the views expressed in the majority opinion to the effect that a simulation pure and simple is an absolute nullity, and, as such, imprescriptible.

However, I cannot subscribe to the view of the majority in so far as it adjudicates upon the alternative plea—which adjudication is, at best, an advisory opinion—affecting collation, for collation is "the supposed or real return to the mass of the succession which an heir makes of property * * * he received in advance of his share or otherwise, in order that such property may be divided together with the other effects of the succession" (R.C.C. 1227), and it cannot be determined whether such collation may be due and demanded by reason of infringement upon the legitime of the other forced heirs unless and until the value of the estate as a whole is finally fixed in the succession proceedings, and proper action taken to have the succession property partitioned. See, R.C.C. 1234.

Furthermore, the donee may retain the gift by renouncing the succession, being subject to collate only "the sum necessary to complete" the legitimate portion (R.C.C. 1237); is not required to collate if the gift was intended as an extra portion and does not infringe the legitime (R.C.C. 1231); and has the right to choose to "make the collation in kind or by taking less" (R.C.C. 1255). Besides, "The donee * * * may keep possession of the same [property donated] until the final reimbursement of the sums to him due for the necessary and useful expenses which he has made thereon, after deducting the amount of the damage the estate has suffered through his fault or neglect * * *." R.C.C. 1268.

Moreover, I entertain serious doubt as to the correctness of the majority view with respect to the prescription applicable to the action of collation, for although the heir has a right to renounce the succession and retain the gift under R.C.C. 1237, "The faculty of accepting or renouncing a succession becomes barred by the lapse of time required for the longest prescription of the rights to immovables" (R.C.C. 1030), which is 30 years. R.C.C. 3475.